UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

JIMMY DILLINGHAM #108254        )
                                )
                                )
v.                              )        NO. 2:11-CV-07
                                )
DERRICK SCHOFIELD,  Comm'r;[1]  )
DAVID SEXTON, Warden;           )
B. EPPERLY, Corr. Officer;      )
F/N/U GIARRUSSO, Corr. Officer; )
and MIKE SMITH, Unit Mgr., H.S.A. )

## MEMORANDUM and ORDER

Jimmy Dillingham, a prisoner in the custody of the Tennessee Department of

Correction (TDOC), brings this *pro se* civil rights action for damages and injunctive

relief under 42 U.S.C. § 1983, asserting that he has been subjected to unconstitutional

treatment and confinement conditions at the Northeast Correctional Complex (NECX),

where he is incarcerated.   Defendants are the TDOC Commissioner, the NECX

Warden, and three NECX employees—all of whom are sued in their individual and

official capacities.

Plaintiff has also filed an application to proceed without prepayment of fees, as

well as a financial affidavit.

---

[1]   Upon plaintiff's motion (Doc. 11), Derrick Schofield, Commissioner of the Tennessee
Department of Correction, was substituted for Gayle Ray, the former occupant of that position who
was named as a defendant in the original pleading.

# I.  The Filing Fee

Plaintiff's pauper documents show that he presently possesses and, for the last six months, has possessed a zero ($0.00) balance in his inmate trust account. Nonetheless, since plaintiff is a prisoner, he is **ASSESSED** the civil filing fee of $350.00.  28 U.S.C. § 1915(b)(1).  If plaintiff's monthly income ever exceeds $10.00, the custodian of his inmate trust account shall submit to the Clerk's Office twenty percent (20%) of his monthly income until the full filing fee of $350.00 has been paid. *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  All payments should be mailed to the Clerk of Court, USDC; 220 West Depot Street, Suite 200; Greeneville, TN 37743.

To ensure compliance with the fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at NECX and to TDOC Commissioner Schofield.

# II.  Plaintiff's Allegations

In his complaint, plaintiff makes the allegations which follow.

Plaintiff has a number of chronic health issues, including colon cancer, which causes rectal bleeding. Unit Manager Smith and Correctional Officers Epperly and Giarrusso have denied plaintiff access to medical care.  More specifically, defendant Smith has permitted defendants Epperly and Giarrusso "to deliberately use

2

intimidation and threats to withhold medical care for plaintiff by making false excuses to other staff that they don't have time to get plaintiff out of [his] cell to see [a] nurse." Once, on December 22, 2010, defendants Epperly and Giarrusso told the prison doctor that they were required to distribute commissary Christmas packages to inmates and (inferentially) chose to perform this task instead of escorting plaintiff to his doctor visit. On December 27, 2010, these same two defendants stole a bar of plaintiff's soap to keep him from taking the daily shower ordered by the prison doctor.

Dana Lee, M.D., the prison physician, repeatedly has ordered diagnostic tests for plaintiff, so that the doctor could understand the level of treatment plaintiff needed. In August of 2010, plaintiff was scheduled to see a gastroenterologist in Johnson City, Tennessee, but defendants cancelled the appointment and reset it for the next month. The September appointment was also cancelled and rescheduled for December. The December appointment likewise was cancelled. Plaintiff alleges that the above described conduct has caused him unnecessary suffering, that it amounts to medical indifference, and that it is a willful attempt by defendant Commissioner and defendant Warden to punish him by denying him medical care.

In January, 2005, plaintiff's right index finger was broken. Following a trip to Special Needs Medical Prison in Nashville, plaintiff returned to NECX with instructions from the Medical Director of the Nashville facility to send plaintiff to a

3

local hospital to repair his finger. The next month, plaintiff was evaluated by an orthopedic surgeon at the Watauga Orthopedic Clinic in Johnson City, Tennessee. However, plaintiff now has a deformed index finger.[2]

The inmate grievance procedure, which plaintiff has utilized, is a mockery. Defendants Smith, Epperly and Giarrusso have punished plaintiff for filing grievances by placing assaultive inmates in plaintiff's cell or in his group-time and by instructing those inmates to beat, hurt, or "sexually rape" plaintiff. These same defendants also retaliate against plaintiff on a daily basis by telling other inmates that plaintiff is a "snitch," calling him other obscene names, and "Gassing" up (inciting?) those inmates to abuse plaintiff, both verbally and physically, and to harass plaintiff because of his medical problem.

For example, defendants Epperly and Giarrusso often tell other inmates that plaintiff is bleeding, that he has HIV/AIDS (Human Immunodeficiency Virus), that he must wear diapers, and that he is a "snitching whore." Furthermore, plaintiff's repeated filing of grievances and letters have served to alert the Commissioner, the Warden, and the Unit Manager to these problems. Nonetheless, these three defendants

---

[2]  Plaintiff's specific allegation is that "the Defendants to this date, have seen that plaintiff was taken to his medical appointments, and ensure that broken finger has now grown irregular and is not fuctional (sic)." Only by inserting the word "not" between "have" and "seen" does this sentence make sense. If the sentence is read thus, then one can fairly infer that plaintiff is alleging that, because he was not taken for his check ups, there was no medical provider to oversee and correct the improper mending of the broken bone(s) in his finger.

4

ignored the claimed wrongdoing, even though they could have used the unit camera to view the video of the oppressive actions of staff and inmates. Moreover, with defendant Smith's permission, defendants Epperly and Garruso allow inmates out of their cells to threaten plaintiff's life.

Prior to November of 2010, plaintiff was receiving proper food and medical service, just as did all other inmates in his protective custody unit. (Plaintiff's past cooperation with law enforcement requires him to be segregated from other inmates in the unit and, as best as the Court can interpret plaintiff's allegations, to be housed in a single cell.) Now, however, plaintiff is fed in his cell and often given ice cold food in smaller portions than before. Though the staff and other inmates tell him his food has been tampered with by unsupervised inmate kitchen workers, the staff refuses to check the food or to ensure that hateful inmates are not tampering with it. Defendants Epperly and Giarrusso taunt him about food tampering, asking, "Well, what's in your food today? Or, I wonder if they spat or put unknown substances in Dillingham (sic) diet food." Plaintiff believes that he is being singled out for abuse.

Conditions in the unit are deplorable and shock the conscience . The prison has been neglected, is not properly maintained, is crowded, and is understaffed—all of which shows a wilful disregard for plaintiff's safety. Electrical outlets are not working and electrical wiring hangs from the walls. The "toilet sinks" leak and cells flood, are

5

poorly ventilated, and are constantly damp. "Black mole," according to plaintiff, grows on his cell walls and is making him sick.

Cells are unheated and, indeed, defendants allowed the heat to go off from December 25th to the 28th of 2010, when the outside temperature was below zero. As a result, ice formed on the inside of plaintiff's cell and his hands grew so cold that his fingers cracked open and bled. Defendants Epperly and Giarrusso told him "to suck it up and stop whining" in response to his numerous emergency grievances about the lack of heat. Furthermore, these two defendants have ignored his other complaints and, indeed, punish him for filling (making?) them.

Some staff members are corrupt and are involved with inmates who engage in smuggling drugs, tobacco and cell phones into the prison. Plaintiff has reported this flagrant, egregious conduct to the U.S. Attorney's office and to Internal Affairs at the prison. He repeatedly has notified the Commissioner and the Warden about this conduct, but was told to stop writing letters and complaining.

Another concern of plaintiff's is nepotism at the prison, which violates state law and written policy and puts plaintiff's life in danger. The danger exists because plaintiff has no idea who is related to whom and who he can trust with specific, confidential, and (by inference) incriminating information he possesses about staff members. Once, he was talking to a staff member about a nurse who was smuggling

cell phones into the prison, only to discover that the nurse has two sons who are employed at the prison.

Defendants Epperly and Giarrusso have allowed another inmate, one Anthony Valenta, to have access to plaintiff's confidential information, such as his military discharge, which contains his social security number and date of birth. Further, they have permitted this inmate to commit a fraud offense by using the United States Postal Service to receive an economic stimulus payment check. Mr. Valenta has also attended a "(3)$^{rd}$ party" on the outside for defendants Epperly and Giarrusso—a common occurrence in the TDOC and a national problem which is out of control.

### III.  Screening the Complaint

The complaint must now be screened and must be dismissed, if it is frivolous or malicious, fails to state a claim, or names defendants who enjoy immunity. 28 U.S.C. § 1915A and § 1915(e). The Court must accept the allegations as true, *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), and must hold this *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972). Even so, the complaint may be dismissed for failure to state a claim if it contains mere "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550

7

U.S. 544, 555-557 (2007). For ease of discussion, the claims have been divided into categories.

## A. Official Capacity

Plaintiff seeks damages from defendants Epperly and Giarrusso in both their individual and official capacities. These defendants are employees of the Tennessee Department of Correction, an agency of the State of Tennessee. This is significant because the Eleventh Amendment bars an action for damages in a federal court against a State, a state agency, or any of its employees in their official capacities, unless Congress has abrogated its sovereign immunity or the State has expressly waived it. *See Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986).

Congress has not abrogated Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332 (1979), and Tennessee has not waived it. *See Gross v. University of Tennessee*, 620 F.2d 109, 110 (6th Cir. 1980). Accordingly, these two defendants, in their official capacities, are entitled to immunity from damages, and these particular claims are **DISMISSED**.[3] Fed. R. Civ. P. 12(b)(6).

## B. Respondeat Superior

_____

[3] However, a state official, acting in his official capacity, may be sued for injunctive relief "because "official-capacity actions for prospective relief are not treated as actions against the State." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

Plaintiff maintains that the TDOC Commissioner is responsible for day-to-day operation of the prison system and must ensure that employees under his supervision have the proper training necessary to perform their assigned duties. Warden Sexton and Unit Manager Smith, likewise, are responsible for the day-to-day operation of, respectively, the prison and the protective custody unit.

To the extent that plaintiff is seeking to impose supervisory liability on these defendants, § 1983 liability must be based on more than respondeat superior, or a defendant's right to control employees. *Taylor v. Michigan Dep't of Corrections,* 69 F.3d 76, 80-81 (6th Cir. 1995); *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). Absent any contentions that defendants condoned, encouraged, or knowingly acquiesced in the specific incident of misconduct, plaintiff has failed to state a claim against them. See *Fowler v. Burns*, 2011 WL 3416729, *5 (6th Cir. Aug. 4, 2011) ( "We will not adopt a rule that would require every supervisor, issuing every routine directive, to remind his subordinates to carry out their duties within the bounds of the Constitution."); *Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) ("[E]ven if a plaintiff can prove a violation of his constitutional rights, his § 1983 claim must fail against a supervisory official unless the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.") (quoting *Cardinal v. Metrish,* 564 F.3d 794, 802-03 (6th Cir. 2009)). Because plaintiff's theory of recovery

9

is unavailable under § 1983, any and all claims resting upon this theory are **DISMISSED**.

## C. Medical Mistreatment

Plaintiff, who claims to have chronic health conditions, including colon cancer and rectal bleeding, maintains that on December 22, 2010, defendants Epperly and Giarrusso told the prison doctor that they had another duty to perform and did not take him to visit the doctor. Five days later, according to the complaint, these two defendants took a bar of plaintiff's soap to prevent him from taking a shower, as ordered by the doctor. Plaintiff claims that these two defendants offer false excuses to other staff members that they have no time to remove plaintiff from his cell and escort him to see the nurse.

Plaintiff further claims that the prison physician ordered diagnostic tests; that, in the Fall of 2010, he had three appointments with a gastroenterologist, who (by inference) would run these tests; that all three appointments were cancelled; and that only two were re-booked. Plaintiff characterizes the cancellations as a willful attempt on the part of the Commissioner and the Warden to punish him by withholding medical care.

These claims are governed by *Estelle v. Gamble*, 429 U.S. 97 (1976), which holds that the Eighth Amendment is violated when prison authorities are deliberately

indifferent to the serious medical needs of prisoners. An Eighth Amendment claim has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the plaintiff to show a "sufficiently serious" deprivation. *Id.* A medical need may be objectively serious if even a lay person would recognize the seriousness of the need for medical care. *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (citing *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). A prisoner may also show that he had a serious medical need by showing that a delay in treatment had a detrimental effect on a non-obvious condition that was sufficiently serious as to rise to the level of a constitutional violation. *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires a showing of a sufficiently culpable state of mind—one of deliberate indifference. *Farmer*, 511 U.S. at 842. Deliberate indifference is illustrated by a prison official who acts or fails to act despite knowledge of a substantial risk of serious harm to the inmate. *Id.* The claim concerning a one-day denial of a doctor visit, under the circumstances here alleged, does not state a claim for relief. There is nothing to show that plaintiff's condition was sufficiently grave since he has not described any problems he was having at that time with his colon cancer or chronic illnesses that necessitated a visit with his doctor. Nor has plaintiff shown that the delay of medical care was detrimental. *Napier*, 238 F.3d at 742. At any rate, the

11

Eighth Amendment does not require that every request for medical care made by a prisoner be honored. *Fitzke v. Shappelle*, 468 F.2d 1072, 1076 (6ᵗʰ Cir. 1972).

Of equal significance, plaintiff has not shown that defendants acted with the requisite state of mind—one which evinces "deliberateness tantamount to intent to punish." *Miller v. Calhoun County,* 408 F.3d 803,813 (quoting *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6ᵗʰ Cir.1994)). This is so because plaintiff has failed to offer any facts to demonstrate that these defendants were actually aware that plaintiff faced a substantial risk of injury if he did not see a physician promptly. *Farmer*, 511 U.S. at 837 (finding deliberate indifference where prison official knows facts from which he could draw an inference of the existence of a substantial risk of harm and where he actually draws the inference). Having failed to show either element of an *Estelle* claim, plaintiff has failed to establish any entitlement to relief.

The allegation concerning the stolen bar of soap similarly is wanting. Plaintiff has not provided any factual contentions concerning the medical malady from which he suffered so as to permit the Court to find that he had a serious medical need for soap and a shower. The same is true of the state-of-mind element (i.e., deliberate indifference), given the lack of a showing that defendants knew facts from which they could infer the existence of a substantial risk of harm if plaintiff was unable to take a shower with soap and that they actually drew the inference.

Plaintiff's assertions concerning the cancellation of his August and September appointments do not state a claim. Although a prison physician's referral of an inmate to a private specialist suggests a serious medical need, especially given plaintiff's history of colon cancer, *see Runkle v. Fleming*, Nos.10-5321; 10-5322, slip op. at 3 (6th Cir. Aug. 12, 2011) (noting that "a history of colon cancer, with the potential of recurrence, presents a sufficiently serious medical need"), there is no indication that the person who cancelled those appointments disregarded plaintiff's need for medical care since the appointments were re-booked for a few months later. *Farmer*, 511 U.S. at 835-36 (concluding that, by taking reasonable measures to abate the harm, a defendant avoids liability, even if the harm is not averted). The Court simply does not see a constitutional violation here because there is no evidence of deliberate indifference.

However, the cancellation of the December appointment is arguably different because plaintiff appears to be claiming that he has not been rescheduled to see the gastroenterologist and that he has yet to have those tests which were ordered by the prison doctor. Plaintiff contends that defendant Sexton and former TDOC Commissioner Ray, who is no longer a defendant, showed "medical indifference," resulting in a "direct denial of medical" care. In view of plaintiff's history of colon cancer, the Court cannot say that these contentions are frivolous, malicious, or that

13

they do not state a colorable constitutional claim. This claim will go forward against the only remaining defendant implicated in the incident, Warden Sexton.

The last claim to be discussed involves plaintiff's broken index finger which occurred in 2005. In a § 1983 action, the statute of limitations to be applied is the analogous state statute of limitations governing actions for personal injury. *Wilson v. Garcia*, 471 U.S. 261, 276-280 (1985). Tennessee applies Tenn.Code Ann. § 28-3-104 to personal injury claims, including claims for damages filed under 42 U.S.C. § 1983. This statute provides a one (1) year period in which a lawsuit may be commenced after the cause of action accrues. A claim accrues when a plaintiff knows or has reason to know of his injury. This lawsuit was filed on January 10, 2011. Therefore, because the contentions in this lawsuit concerning plaintiff's index finger which are based on events arising in 2005 are untimely and are barred by the applicable one-year statute of limitations.

## D. Grievances/Letters and Retaliation

Plaintiff claims that, even though the NECX grievance procedure is a "mockery," he nonetheless notified former Commissioner Ray and defendants Sexton and Smith concerning his problems with defendants Epperly and Giarruso by filing grievances and writing letters. Even though his grievances were ignored, defendants Epperly and Giarruso retaliated against plaintiff for filing them. The reprisals included

putting assaultive inmates in the cell with plaintiff; instructing those inmates to beat him up, hurt, or rape him; and telling other prisoners that plaintiff was bleeding, had HIV-AIDS, had to wear a diaper, and was a snitch, so as to goad them into verbally and physically abusing and harassing him.

The allegations concerning the character of the grievance system (a mockery) and the disregard shown to plaintiff's grievances fail to state a claim under § 1983 because plaintiff is not entitled to a "grievance system[] that meet[s] his standards," *Smith v. Corrections Corp. of America*, 19 Fed.Appx. 318, 321, 2001 WL 1109854, 2 (6th Cir. Sept. 12, 2001), and, indeed, he has no constitutional right to access an institutional grievance procedure. *See Walker v. Michigan Dept. of Corrections*, 128 Fed.Appx. 441, 445 (6th Cir. Apr. 1, 2005) ("All circuits to consider this issue have also found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures.") (listing cases); *Mahammad v. Serett*, No. 88-5396, 1988 WL 113996 at *1(6th Cir. Oct. 24, 1988) (unpublished decision) ("[I]nmate grievance procedures are not constitutionally required in state prison systems, therefore, the defendant's alleged failure to follow grievance procedures does not give rise to a § 1983 claim.").

The remaining claims in this category concerning retaliation must satisfy certain elements. A prisoner states a retaliation claim if he shows that: (1) he engaged in

15

protected conduct (2) an adverse action was taken against him which would deter a person from ordinary firmness from continuing to engage in such conduct and (3) the adverse action was motivated by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Here, plaintiff has alleged that he filed grievances. He has alleged that, afterwards, defendants Epperly and Giarruso placed inmates in his cell, instructed them to harm him, and told them that he was an informer. Finally, he has asserted that these actions were taken to retaliate against him for filing grievances. These allegations arguably state a claim for relief under § 1983 against these two defendants. *Bloch v. Ribar*, 156 F.3d 673, 681-82 (6th Cir. 1998) ("[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.") (citation omitted).

## E. Conditions of Confinement

The conditions and treatment to which a prisoner is subjected fall within the purview of the Eighth Amendment, *Helling v. McKinney*, 509 U.S. 25, 31 (1993), which is violated when prisoners are confined under conditions that unnecessarily and wantonly inflict pain upon them. *Wilson v. Seiter*, 401 U.S. 294, 297 (1991). Prison officials must provide humane conditions of confinement. *Farmer*, 511 U.S. at 832-33.

To prevail on a conditions-of-confinement claim, an inmate must first show that he suffered an objective, sufficiently serious deprivation (i.e., one that results in the denial of the minimal civilized measure of life's necessities). *Farmer*, 511 U.S. at 834; *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) ("To move beyond the pleading stage . . ., an inmate must allege that he has been deprived 'of the minimal civilized measure of life's necessities.'") (citing *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). Because "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," *Rhodes*, 452 U.S. at 347, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian,* 503 U.S. 1, 8-9 (1992). The risk complained of must be considered by society "to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36 (italics in original).

Next, the inmate must demonstrate that a prison official acted with the requisite intent of deliberate indifference. *Farmer*, 511 U.S. at 842; *Helling*, 509 U.S. at 32. As stated, deliberate indifference is demonstrated where defendants were aware of facts from which they could infer that a substantial risk of harm existed, where they actually drew that inference, and where they chose to ignore the risk. *Farmer*, 511 U.S. at 837.

17

With regard to his living conditions, plaintiff complains about a plethora of claimed unconstitutional conditions (i.e., overcrowding, under staffing, neglect of the facility, water leaks in cells and plumbing, non-working electrical outlets, exposed wiring, poor ventilation, dampness, a lack of heat for three days, and black mold, which is "literally making [him] sick"). Compl at 12. Plaintiff states that he has filed grievances regarding these conditions, but that defendants Epperly and Giarrusso "simply will not report and punish me for filing complaints." (*Id.*).

If overcrowded conditions cause an inmate to be denied the minimal civilized measure of life's basic needs, such as food, warmth, or exercise, this would transgress the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 298, 304 (1991). But, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.*

Four claims can be disposed of at once. Plaintiff has not identified any single human need which has been denied him due to overcrowding, the lack of staff, or non-working electrical outlets at the prison. Likewise, any defendants' neglectful conduct in maintaining the prison's physical plant is not of constitutional concern since negligence does not satisfy the requisite mental state. *See Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) (deliberate indifference "entails something more than mere negligence") (quoting *Farmer,* 511 U.S. at 835); *Woods v. Lecureux*, 110 F.3d 1215,

18

1222 (6th Cir. 1997) ("deliberate indifference standard 'describes a state of mind more blameworthy than negligence'") (quoting *Farmer*, 511 U.S. at 835); *Antonelli v. Sheahan*, 81 F.3d 1422, 1429 (7th Cir. 1996) (prisoner's claims of negligent maintenance of a building did not suffice to show deliberate indifference).

The other wrongful-conditions claims—exposed wiring, water leaks, poor ventilation, dampness, and black mold—may arguably state a claim for relief. *Helling*, 509 U.S. 34 (exposed electrical wiring which threatens inmate's personal safety actionable under 8th Amendment) (citing to *Rhodes*, 452 U.S. at 352 n.17); *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994) (noting that 8th Amendment is violated by conditions that, in combination, have a "mutually enforcing effect" which causes a denial of a single identifiable human need).

The claim that plaintiff's cell is unheated and that there was no heat for three days is a closer question. However, in view of plaintiff's allegations that the temperature outdoors was below zero, that ice formed in the cell, and that the skin on his fingers cracked and bled from the cold temperature inside his cell, the claim cannot be dismissed at the pleading stage as frivolous, malicious or for failure to state a claim. *Wilson*, 501 U.S. at 304 (A sufficiently serious deprivation might be found where an inmate is subjected to a low cell temperature at night, not provided blankets, and deprived of his basic need for warmth.); *Henderson v. DeRobertis*, 940 F.2d 1055,

1060 (7th Cir. 1991) (reinstating jury verdict on prisoners' claim that "taking four days to repair the heating system . . . without providing any temporary or alternate means of protection from the subfreezing temperatures is deliberate indifference").

This claim will proceed against defendants Epperly and Giarrusso, who it is claimed told him "to suck it up and stop whining" in response to his numerous emergency grievances about the lack of heat, as well as defendant Warden. *Brown v. Bargery*, 207 F.3d 863, 868 (6th Cir. 2000) ("Moreover, we must assume-based on [plaintiff]'s allegations concerning his repeated attempts to notify prison officials about the conditions in his cell-that the warden knew about and deliberately disregarded the risk to [plaintiff]'s health and safety.").

## F. Other Claims in the Complaint

Plaintiff's claims concerning nepotism at the prison are not supported by a citation to a federal statute, regulation or case which supports that he has a right to a policy against a practice of nepotism, much less standing to enforce a prison or state's anti-nepotism policy. The allegations involving corruption, drug-smuggling, and fraud offenses at the prison have been reported appropriately to state and federal prosecutors. However, since plaintiff has no constitutional right to initiate or compel the prosecution of others, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), the claimed illegal conduct is not cognizable in this § 1983 lawsuit. The contentions of food

tampering lack sufficient factual support because they are comprised of "naked assertions" and conclusions. *Twombly,* 550 U.S. at 555. Allegations supported only by plaintiff's own opinions and conclusions fail to state a claim for relief under § 1983. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Plaintiff's assertion that his personal information, including his social security number, is accessible by an another inmate is, broadly construed, an allegation that his right of privacy has been infringed. However, the right of privacy with regard to social security numbers is not constitutional, but statutory. *In re Turner*, 193 B.R. 548 (Bankr. N.D.Calif.1996) (finding that a social security number is not included in one of the "zones of privacy" recognized as "fundamental" or "implicit in the concept of ordered liberty").

Furthermore, the statutory right of privacy established in the Privacy Act of 1974, 5 U.S.C. § 552a, *et seq*., applies only to dissemination of personal information by federal agencies. *Schmitt v. City of Detroit*, 395 F.3d 327, 331 (6th Cir. 2005). Also, individuals are not proper defendants in a case under the Privacy Act, which permits only agencies to be sued. *Windsor v. The Tennessean*, 719 F.2d 155, 160 (6th Cir. 1983). Again, the plaintiff fails to state a valid § 1983 claim.

**F. Later Claims**

After filing the complaint, plaintiff made additional allegations in several motions he submitted. In first of these, (Doc. 5), plaintiff asserts that, after he filed this lawsuit, defendants Epperly and Giarrusso entered his cell, read their names on his legal mail, and began to threaten him and engage in other acts of retaliation against him for filing a civil action. In the next motion (Doc. 6), plaintiff maintains that defendant Smith and other officers forced him into a cell with a known assaultive inmate and that defendant Giarrusso told the inmate to " take care of [plaintiff] and nothing would happen to this inmate." Thereafter, the other inmate beat plaintiff with a musical instrument, causing injury to plaintiff's ribs, as well as a broken right hand and abrasions and contusions to the face and body. Defendant Giarrusso's response to the assault was to say to the other inmate: "Good job." Plaintiff was taken for medical treatment, given an aspirin, then escorted to a disciplinary cell, where he was refused further medical treatment. Finally, plaintiff claims in a third motion (Doc. 7), that he is housed in a completely dark cell and has been told, when he complained, that he would be kept there forever.

Defendants Epperly, Giarrusso, and Smith should consider these assertions, save the next to the last one (i.e, involving denial of medical care) , to be included with the rest of the claims plaintiff has alleged against them.  The claim involving the denial of medical treatment after plaintiff was taken to the hole contains no allegations of fact

as to who refused plaintiff further medical treatment. Since nothing has been offered from which to draw an draw an inference as to a defendant's state of mind, plaintiff has failed to state a claim for deliberate indifference of serious medical needs under *Estelle*.

## IV. Conclusion

To sum up, only these claims have passed the screening test and may proceed to service: 1) the claim against defendant Sexton involving plaintiff's cancelled December, 2010, appointment with a specialist; 2) the retaliation claim against defendants Epperly and Giarrusso; 3) the conditions-of-confinement claims (exposed wiring, water leads, poor ventilation, dampness, black mold, and 3-day denial of heat) against the same three defendants; 4) the assault claim (in Doc. 6) against defendants Smith and Giarrusso; and 5) the unlit-cell claim against defendant Giarrusso. Accordingly, the Clerk is **DIRECTED** to send plaintiff service packets for defendants D. Sexton, B. Epperly, Giarrusso, and Smith. (Each packet contains a blank summons and USM 285 form.) Plaintiff is **ORDERED** to complete the service packets and to return them to the Clerk's office within twenty (20) days of the date on this Order. Plaintiff is forewarned that failure to return the completed service packets within the time required could jeopardize his prosecution of this action.

When the completed service packets are received by the Clerk, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service upon defendants. Defendants are **ORDERED** to respond to the complaint in the manner and within the time required by the Federal Rules of Civil Procedure.

Plaintiff is **ORDERED** to inform the Court of any address change within ten (10) days following such change. He is further cautioned his failure to do so will result in a dismissal of this action for failure to prosecute.

Because there are no actionable claims against TCOC Commissioner Derrick Schofield, he is **DISMISSED** as a defendant in this lawsuit.

## V.  Plaintiff's Motions

As noted above, after filing the complaint, plaintiff filed several motions. (Docs. 5-7, and 10). For ease of discussion, the last motion will be discussed first and the rest grouped together.

**A.  Motion to Recuse**

Plaintiff advances three bases for his motion to recuse, (Doc. 10), the first of which is that plaintiff was a client of the undersigned district judge before his ascension to the bench. Second, plaintiff asserts that this judicial officer, who hails from the same county wherein NECX is located (i.e., Johnson County, Tennessee),

enjoys close personal relationships with unidentified prison officials. Third, plaintiff maintains that the undersigned shows bias and prejudice towards his issues and claims.

There are two recusal statutes, 28 U.S.C. § 144 and § 455, with the latter providing that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C.§ 455(a).[4] This provision has been read as requiring recusal "if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *Johnson v. Mitchell,* 585 F.3d 923, 945 (6th Cir. 2009) (internal quotation marks and citation omitted); *Roberts v. Bailar,* 625 F.2d 125, 129 (6th Cir. 1980) (same). A court considering recusal must bear in mind that "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Hinman* v. *Rogers*, 831 F.2d 937, 939 (10th Cir. 1987).

1. Former Client: The first argument is that recusal is appropriate because plaintiff was a client of the undersigned while he was engaged in private practice in Greeneville. The statute requires a judge's recusal, *inter alia*, "[w]here in private

---

[4]    Section 144 does not apply in this case because it requires a party seeking recusal to submit an affidavit stating the facts and reasons for the litigant's belief that bias or prejudice exists and because no affidavit was filed. It makes no difference in the analysis, however, because the grounds for recusal based on bias or prejudice in §144 are duplicated in §455(a)(2). *Bell v. Johnson*, 404 F.3d 997, 1004 n. 7 (6th Cir. 2005) (citing *Liteky v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)).

practice he served as lawyer in the matter in controversy." 28 U.S.C. § 455(b)(2).

This provision does not fit the present situation for these reasons: The earliest event mentioned in the complaint occurred in 2005; this judicial officer relinquished his private law practice in 2003, upon taking the bench; and, thus, the Court was not and could not have been affiliated as a lawyer in the "matter in controversy."

Even though the disqualification statute does not address recusal under the circumstances here presented (i.e., where the Court served as a party's lawyer in an unrelated case), the Administrative Office of the U.S. Courts has issued a publication containing ethical norms to assist courts in preserving the actual and apparent integrity of the federal judiciary, and one of those rules addresses the issue sub judice. *Guide to Judiciary Policy,* vol. 2: Ethics and Judicial Conduct, pt B: Ethics Advisory Opinions, ch 3: Compendium of Selected Opinions § 3.6-5(b) (Rev. July 11, 2011), available at http://jnet.ao.dcn/img/assets/6520/Vol2B_Ch3_bkmrk.pdf (restricted access) (All Internet materials as visited August 2, 2011 and available in Clerk of Court's file). To resolve the recusal issue in question (i.e., litigation of a former client of a judge in a matter unrelated to the earlier representation), the Guide sets forth several factors to apply. These factors include " the length of time since the earlier representation ended; the nature, duration, and intensity of the earlier representation; the presence or absence of ongoing personal relationships; etc." *Id.*

The first factor to be applied cuts against recusal since the Court's private legal practice in Greeneville spanned a twenty-year period (1983-2003) and since any representation of plaintiff would have had to occur from two to twenty-eight years before the matter in controversy arose. *See, e.g., Sphere Drake Ins. Ltd. v. All American Life Ins. Co.*, 307 F.3d 617, 621-22 (7th Cir. 2002) ("Nothing in the Code of Conduct for federal judges makes prior representation of a litigant a disqualifying event. The norm among new appointees to the bench is that once two years pass, perhaps even earlier, a judge is free to sit in controversies involving former clients.").

As to the second component, the Court has searched its memory and, while it recalls that it did represent plaintiff while in private practice, this judicial officer has absolutely no recollection of the representation, and therefore cannot explore its nature, duration, or intensity.[5] The Court can say that it remembers its involvement in particular legal proceedings—those which were lengthy, notably intense, or atypical—and thus concludes that its prior representation was not of that character.

Certainly, the third factor also militates against recusal, as the Court has no continuing personal relationship with plaintiff, who is now serving a forty-year

---

[5] Most of the client files of the undersigned were retained and placed in storage assuming the bench. Based upon a list of former clients maintained it has been determined that the undersigned opened a file in plaintiff's name sometime in 1984, although no file can be located among those retained.

27

sentence of incarceration, which was imposed on October 31, 1989—well before it took the bench. *See State v. Dillingham*, 1993 WL 22155 (Tenn. Crim. App. Feb. 3,1993).

Based upon this analysis and cases interpreting the governing statute, the Court finds that no reasonable person would question its impartiality, and thus, it will not recuse itself from presiding over the instant proceedings. *See, e.g., United States v. Lovaglia*, 954 F.2d 811, 815 (2nd Cir. 1992) ("A judge's prior representation of one of the parties in a proceeding . . . does not automatically warrant disqualification."); *United States v. Hurst*, 951 F.2d 1490, 1503 (6th Cir. 1991) (no reasonable question concerning impartiality where a judge, years earlier, while in private practice, filed suit against defendant for an investment group alleging fraud).

2. <u>Commonality of Place</u>: Next, plaintiff suggests that personal relationships have developed between this judicial officer and the officials at the NECX based on nothing more than the fact that NECX is located in this judicial officer's home county. A judge must recuse "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." § 455(b)(1).

The prison officials who allegedly have a personal relationship with the Court have not been identified and no details surrounding those putative relationships have

28

been alleged. There must be a sufficient factual basis to support recusal. *See United States v. Story*, 716 F.2d 1088, 1090 (6th Cir. 1983) (the facts must demonstrate that the judge's cast of mind is incompatible with unbiased judgment). Therefore, these allegations of fact are inadequate to sustain a recusal.

Nonetheless, this judicial officer has not resided in his home county for nearly four decades and, to his knowledge, has no ongoing personal relationship, friendship, or acquaintanceship with those who are NECX officials. Nor is the Court aware of anything else along these lines which would suggest that recusal is appropriate. Thus, the undersigned district judge finds that no reasonable person knowing these relevant facts would doubt his impartiality. Therefore, the Court declines plaintiff's request to recuse based upon mere illusory relationships.

3. <u>Issues and Claims</u>: The third set of contentions involve supposed bias and prejudice shown by the Court towards plaintiff's issues and claims. Again, plaintiff has not developed his claim factually by suggesting any issue addressed by the Court which is illustrative of the alleged bias. Although this district's electronic case filing system shows that plaintiff filed a prior habeas corpus petition, under 28 U.S.C. § 2254, which later was denied, the district judge who presided over that petition is now deceased. As to the present case, the Court has not rendered judgment, issued any order, or presided over any hearing or other proceeding; thus, any charge of bias concerning

29

claims not even addressed, much less adjudicated by the undersigned can only be imaginary. At any rate, judicial rulings alone seldom serve as grounds for recusal. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) (noting that opinions or rulings in a current proceeding provide no basis for recusal "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible"); *INVST Fin. Group, Inc. v. Chem Nuclear Sys., Inc.*, 815 F.2d 391, 396 (6th Cir. 1987) (noting that "actions of a judge in pending or previous litigation in which the movant has been involved are not grounds for disqualification").

Based on the above discussion, the Court sees no reason to recuse itself. Accordingly, plaintiff's motion for recusal, (Doc. 10), is **DENIED**.

**B.** **Motion for Preliminary Injunction or Restraining Order** (Doc. 5)
**Motion for a Protective Order** (Doc. 6)
**Motion for a Court Order and/or Temporary Restraining Order, "Emergency Court Order** (Doc. 7)

In the first of these motions (Doc. 5), plaintiff asks the Court to reassign defendants Eppperly and Giarrusso and to order them to stop harassing and threatening him, influencing other staff to do the same thing, using their positions to put contraband in his cell, tamper with his food, and destroy state documents which he deems necessary to prove his claims.

In the second motion (Doc. 6), plaintiff seeks an emergency order directing defendants Smith, Sexton, Epperly and Giarrusso to prevent assaults and physical attacks on plaintiff, such as the one which purportedly occurred when plaintiff was beaten with a musical instrument wielded by an inmate with whom plaintiff was forced to share a cell. This incident likewise was addressed in a prior section of this order.

In the third motion (Doc. 7), plaintiff maintains that inmates shoved a letter beneath his cell door on March 2, 2011, which verifies that defendant Giarrusso is attempting to induce another inmate to jump on him during shower time. Plaintiff has appended a copy of the letter to his motion. The letter, presumably authored by "T.", reads:

> "[H]ey, look this dude 'Giarusso' the Guard told Valente he'll leave his latch & door open if he'd get you when you shower. Valente told him no, Giarusso told him he wouldn't spit on you if you were on fire. [H]e also brought Valente 3 letters and said they were from you. [D]on't put me in a cross with Valente or Russo, your (sic) not safe in here. Giarusso's trying to get you jumped on. [I]'ve known you for 20 years so it's a heads up for old time."

(Doc. 7, Attachment 1).

Further, plaintiff maintains that, on March 22, 2011, he was placed in a cell in protected custody with no working lights and, after repeatedly filing grievances, was advised by defendant Giarrusso that plaintiff will always remain in a dark cell and that, if he has

his way, he will have someone set plaintiff's cell on fire. The unlit cell likewise has

been addressed earlier.

> Rule 65(b) of the Federal Rules of Civil Procedure provides that:
>
> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint, that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition[.]

It is a plaintiff's burden to prove that he is entitled to a TRO. *Helling*, 509 U.S. at 35.

In determining whether to grant a request for preliminary relief, the following four

factors must be considered: (1) whether plaintiff is likely to succeed on the merits; (2)

whether plaintiff will suffer irreparable injury in the absence of an injunction; (3)

whether the injunction will cause substantial harm to others; and (4) whether the

injunction would serve the public interest. *Overstreet v. Lexington-Fayette Urban*

*County Government*, 305 F.3d 566, 573 (6th Cir. 2002) (citations omitted).

On balance, plaintiff has failed to show that injunctive relief should be granted.

It is unlikely that plaintiff would succeed on his claims of threats alone since

harassment and verbal abuse are denigrating and doubtlessly unpleasant, but are not the

type of infliction of pain reached by the Eighth Amendment. *Johnson v. Unknown*

*Delatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (quoting *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987)). Moreover, plaintiff does not identify any state documents which have been destroyed or any contraband which defendants have placed in his cell, rendering the possibility of success on this particular claim exceptionally remote. The alleged beating administered by the assaultive inmate with whom he was forced to share a cell was addressed earlier in this memorandum.

There is no indication, beyond plaintiff's own supposition, that he will suffer irreparable injury in the absence of an injunction. The claim that plaintiff fears that he will be assaulted in the future is also a nonstarter. According to the letter which plaintiff has offered in support of his motion, the inmate whom defendant Giarrusso purportedly solicited to hurt plaintiff, one Valente, flatly rejected that proposal.

Furthermore, plaintiff's cell assignment has been changed, and he has indicated that he now occupies a cell, presumably a single cell, in protective custody. As to the request to assign defendants Epperly and Giarusso to other duties, it is rejected since the Court lacks authority to direct the day-to-day operation of a state prison. Put simply, that is not a proper concern for the federal judiciary. At any rate, plaintiff has not and cannot "clearly show that immediate and irreparable injury, loss, or damage," *see* Rule 65(b)(1)(A), will result from the alleged wrongful actions.

And, while it appears no third parties would be harmed if the preliminary injunction were issued, neither does it appear that any public interest would be served. Indeed, it might unduly restrict the discretion of the state authorities who are tasked with operating NECX and protecting inmates to subject their staffing and housing decisions to premature judicial oversight. In short, plaintiff has not borne his burden for issuance of a TRO. Hence, the motions are **DENIED** due to plaintiff's failure to show his entitlement to injunctive relief. (Docs. 5-7).

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
